FILED

2017 Jan-26  PM 12:10
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | | |
|---|---|---|
| ESMERALDA SANJUANI RESENDEZ, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 7:15-cv-01340-VEH-JEO |
| | ) | |
| A. WASHINGTON-ADDUCI, | ) | |
| | ) | |
| Respondent. | ) | |

## REPORT AND RECOMMENDATION

Esmeralda Sanjuani Resendez, *pro se*, initiated this action by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  (Doc.[1] 1). Resendez challenges the duration of her confinement.  The respondent asserts her petition is moot because she has received the procedural and substantive due process she was entitled to during her disciplinary proceedings.  (Doc. 8).

## I.    BACKGROUND

Resendez is a federal inmate at the Federal Correctional Institution at Aliceville, Alabama, serving a 78-month sentence for conspiring to distribute methamphetamine, in violation of 21 U.S.C. § 846.  Her expected release date is

---

[1]References herein to "Doc(s). __" are to the document numbers assigned by the Clerk of the Court to the pleadings, motions, and other materials in the court file, as reflected on the docket sheet in the court's Case Management/Electronic Case Files ("CM/ECF") system.

April 11, 2017.  (Ex.[2] 1).

On September 3, 2013, the petitioner was informed that she needed to submit a urine sample to determine whether she was under the influence of any illegal substance.  (Ex. 2 (Samantha Scales Dec. ("Scales Dec.")); Ex. 3 (Incident Rep.)).  She was given two hours and two eight ounce cups of water, one each hour, to produce a urine sample.  (*Id*.)  The petitioner did not produce a sample as required.  (*Id*.)  *See* 28 C.F.R. § 550.31.  When she did not produce the required sample, she was served with an incident report charging her with refusing to provide a sample.  (Ex. 3).

A disciplinary hearing was conducted.  During the hearing, the petitioner indicated that she had a condition affecting her ability to provide a urine sample.  (Ex. 3).  She stated she "always had a problem providing a urine sample and could only provide a couple of drops of urine."  (*Id*. at 3).  The disciplinary committee referred the matter to the disciplinary hearing officer.  (*Id*. at 2).

On the hearing notice, the petitioner indicated that she wanted a staff witness present at her hearing to confirm that she was nervous trying to produce a urine sample.  (Ex. 4).  At the hearing, however, she opted to proceed without calling her witness.  (Ex. 5).  The petitioner admitted that despite making multiple

---

[2]Documents referenced herein as "Ex. __" are found at document 8.

attempts, she was unable to provide a sufficient urine sample within the requisite

time.  (*Id*.)  As a consequence, she was given 60 days in disciplinary segregation,

disallowed 40 days of good time credit, and disallowed 180 days of privileges.

(*Id*.)  Her disciplinary sanction was upheld by National Inmate Appeals on

September 14, 2015.  (Doc. 7 at 1; Doc. 10 at 17).

## II.   DISCUSSION

### A.   Due Process

In the present case, Resendez initially alleges she was improperly denied

good time credit as a result of the disciplinary proceeding.  The respondent alleges

she has received all of the due process she is entitled.  (Doc. 8 at 4).

In *Wolf v. McDonnell*, 418 U.S. 539 (1974), the United States Supreme

Court held that an inmate is entitled to the following due process rights in

disciplinary proceedings: (1) written notice of the charge; (2) an opportunity to

present witnesses and documentary evidence; (3) an impartial hearing body; (4)

assistance for illiterate inmates or in complex cases; and (5) a written statement of

the evidence relied upon and the reasons for the sanction.  *Id*. at 563-66, 570-71;

*see also Stiger v. Grayer*, 159 F. App'x 914, 915 (11th Cir. 2005).  In reviewing

disciplinary challenges, the Eleventh Circuit has stated:

The Supreme Court clarified that the revocation of good time credits

> satisfies the minimal requirements of due process if the findings of
> the disciplinary officer are supported by "some evidence."
> *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455, 105 S.
> Ct. 2768, 2774, 86 L. Ed. 2d 356 (1985).  In ascertaining whether this
> standard has been met, courts are not required to examine the entire
> record, independently assess witness credibility, or weigh the
> evidence.  *Id.*  Rather, "the relevant question is whether there is any
> evidence in the record that could support the conclusion reached by
> the disciplinary board."  *Id.* at 455-56, 105 S. Ct. at 2774.

*Kenney v. Barron*, 239 F. App'x 494, 495-96 (11th Cir. 2007).

The petitioner is entitled to no relief in the present matter for a number of
reasons.  First, the petitioner has not alleged, nor does the record demonstrate, that
she was denied written notice of the charge, an opportunity to present witnesses
and documentary evidence, an impartial hearing body, assistance as required, or a
written statement of the evidence relied upon and the reasons for the sanction.  To
the contrary, the evidence shows that each of these protections were provided or
not requested by her.

Second, to the extent the petitioner challenges the evidence at the hearing or
the failure of respondent to adequately consider her evidence, the record
demonstrates her claim is legally and factually without merit.  At her disciplinary
hearing, the petitioner asserted that she was not able to provide an adequate urine

sample due to her inability to urinate in the presence of another person.[3]  There is a presumption in instances such as the present one that an inmate is unwilling to provide a sample if she "fails to provide a urine sample within the allotted time period."  28 C.F.R. § 550.31(a).  "An inmate may rebut this presumption during the disciplinary process."  *Id*.  Where an inmate has a previously documented medical condition affecting his or her ability to submit a urine sample for screening, the Bureau of Prisons will make accommodations to appropriately screen that inmate of illegal substances under Program Statement 6060.08.  (*See* Ex. 6 § 9(a)).  It provides, "[o]rdinarily, an inmate is expected to provide a urine sample within two hours of the request, but he Captain (or Lieutenant) may extend the time if warranted by specific situations (for example, the inmate has a documented medical or psychological problem, is dehydrated, etc.)."  (*Id*.)  To receive such an accommodation, the inmate must notify the requesting officer of the documented medical condition before or during the two-hour period.  *See, e.g., Void v. Warden Fort Dix FCI*, 345 F. App'x 818, 820-21 (3d Cir. 2009) (affirming the district court's denial of a § 2241 petition despite an inmate's post-DHO

_____

[3]In her reply in this court, the petitioner notes that she did provide a urine sample, but was "unable to 'fill' the cup."  (Doc. 10 at 3).  She also states, as she did to the disciplinary committee, that she was willing to submit to a blood test or some other test at her expense.  (Doc. 8-3 at 2; Doc. 10 at 3, 6).

hearing complaint concerning medical complications with urinating); *Lopesierra-Gutierrez v. Bechtod*, No. 5:12-cv-372, 2015 WL 5009066, at *1-3 (M.D. Fla. Aug. 20, 2015) (holding that an inmate's *post hoc* mention of a subsequently documented urinary tract infection was insufficient to over come the some-evidence standard).

The evidence in the present case demonstrates that the petitioner did not show that she had a "documented medical or psychological problem" at the time of the request for the sample.[4]   To the contrary, the record affirmatively shows that her condition was not documented until December 3, 2013, months after the disciplinary proceeding.  Specifically, the record shows:

> On December 3, 2013, Resendez stated during a clinical encounter at FCI Danbury Health Services that she had a long-standing history of not being able to urinate in stressful or high-pressure conditions. Resendez told the attending nurse that she had received treatment in Mexico for the issue.  She also indicated that she was told the complication was a non-organic, psychological matter.  In the record of this encounter, the attending nurse noted that Resendez had been placed in detention in the special housing unit for not being able to produce a urine sample.

> On December 23, 2013, Resendez presented to Health Services at FCI Danbury with a medical record from Mexico stating that Resendez had problems urinating in front of other people.  The attending nurse told Resendez to submit an Inmate Request to Staff to have the record

---

[4]At the time of the incident she simply stated to the staff that she has always "had a problem providing a urine sample...."  (Doc. 8-3 at 2 of 3).

added to her medical file.

On April 22, 2014, at FCI Aliceville, Rensendez stated during a
health services visit that she had trouble providing a urine sample in a
timely manner when asked.  She also indicated during this visit that
she would return to heath services on April 23, 2014, with
documentation from an outside doctor concerning her bladder issues.

(Ex. 7 at ¶¶ 4-6).

The record in this case is adequate to demonstrate the presence of "some
evidence" that she violated prison policy and regulations as alleged.  Specifically,
she admitted not providing the sample.  She did not provide any evidence of a
documented medical condition that would affect her ability to produce the
required urine sample.  The petitioner's inclusion in the record of a note from Dr.
Jose Isabel Cornelio Cabrera from Reynosa, Mexico stating that she suffered from
a medical condition that affected her ability to provide a sufficient urine sample, is
inadequate to afford her any relief in this instance.  The note is dated two months
after the disciplinary hearing.  The note was not in her medical file prior to the
incident.  Although the petitioner mentioned her situation during the collection of
a sample, she did not indicate it was a documented medical or psychological
condition that should afford her additional consideration.  She is entitled to no
relief under the circumstances.

Additionally, a further review of her medical records shows that on

7

December 11, 2013, she was able to produce a sufficient urine sample to screen for infections at a third-party hospital.  (Ex. 7 at ¶ 8).  This draws the petitioner's credibility into question.  Accordingly, the court again finds there is "some evidence" to support the disciplinary action.

To the extent that the petitioner argues in her reply that she had "no malicious intent when she was unable to give the 'amount' requested," the court finds that her intent is not the relevant consideration.  (Doc. 10 at 3).  The consideration, as already noted, is whether there is "some evidence" to support the decision to impose a disciplinary sanction.  Her claim is without merit.

### B.    Cruel and Unusual Punishment

The petitioner has also failed to establish an Eighth Amendment violation. To establish such a violation, the petitioner must show that she subjected to some objectively and sufficiently serious deprivation and that the respondent acted with "deliberate indifference" to her health or safety.  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  The sanction imposed in this instance is consistent with sanctions imposed at other institutions.  *See e.g. Void*, 345 F. App'x at 819 (affirming imposition of sanction including loss of 40 days good conduct time, 60 days disciplinary segregation, and loss of 180 days visiting, commissary, telephone, and e-mail privileges for a similar violation); *Lopesierra-Gutierrez*,

2015 WL 5009066, at *1-2 (imposing a sanction including loss of 40 days good conduct time, 30 days disciplinary segregation, and 180 days vising and commissary privileges).  Finally, the court notes that the sanctions imposed on the petitioner did not affect her health or safety in any way.  Thus, this claim is without merit.

## IV.   CONCLUSION

In accordance with the foregoing, the court finds that the petitioner's application for a writ of habeas corpus is due to be denied and dismissed.

### Notice of Right to Object

Any party who objects to this report and recommendation must, within fourteen (14) days of the date on which it is entered, file specific written objections with the clerk of this court.  Any objections to the failure of the magistrate judge to address any contention raised in the petition also must be included.  Failure to do so will bar any later challenge or review of the factual findings of the magistrate judge, except for plain error.  *See* 28 U.S.C. § 636(b)(1)(C).  In order to challenge the findings of the magistrate judge, a party must file with the clerk of the court written objections which shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge shall make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge.  The district judge, however, need conduct a hearing only in his discretion or if required by law, and may consider the record developed before the magistrate judge, making his own determination on the basis of that record. The district judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Objections not meeting the specificity requirement set out above will not be considered by a district judge.

A party may not appeal a magistrate judge's recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a district judge.

The Clerk is **DIRECTED** to serve a copy of this report and recommendation upon the petitioner and counsel for the respondent.

**DONE**, this 26th day of January, 2017.

_____
**JOHN E. OTT**
Chief United States Magistrate Judge